# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2023 Term

_____

No. 22-ICA-327

_____

FILED

**November 16, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

ABIGAIL SHOEMAKER, MARY SHOEMAKER,
and CHRIS SHOEMAKER,
Plaintiffs Below, Petitioners,

v.

TAZEWELL COUNTY PUBLIC SCHOOLS
and KIMBERLY BENSON,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Mercer County
Honorable William Sadler, Judge
Civil Action No. CC-28-2021-C-97

REVERSED AND REMANDED

_____

Submitted:  October 31, 2023
Filed:  November 16, 2023

Kevin A. Nelson, Esq.
Arie M. Spitz, Esq.
Dinsmore & Shohl LLP
Charleston, West Virginia
Counsel for Petitioners

Wendy E. Greve, Esq.
Christopher T. Ferro, Esq.
Pullin, Fowler, Flanagan, Brown &
Poe, PLLC
Charleston, West Virginia
Counsel for Respondents

JUDGE LORENSEN delivered the Opinion of the Court.

LORENSEN, Judge:

Petitioners Abigail, Mary, and Chris Shoemaker appeal an order of the Circuit Court of Mercer County granting summary judgment to Respondent Kimberly Benson, a high school swim coach employed by Tazewell County Public Schools ("TCPS"), a school district that administers all public schools in Tazewell County, Virginia.[1] This matter arises from an incident at the pool facilities of Bluefield State University ("Bluefield State") in Bluefield, West Virginia. There, coach Benson was conducting a swim practice for the Graham High School swim team,[2] of which Petitioner Abigail Shoemaker was a member. Before entering the pool, coach Benson instructed the team to perform "wall-sit" exercises, requiring students to brace themselves against a vertical surface. While performing the exercise, Abigail was positioned against one of the facility's exterior wall glass panels, which shattered, inflicting serious injuries. Thereafter, Petitioners brought this action against Bluefield State, TCPS, and coach Benson.

On appeal, Petitioners argue that the circuit court erred in concluding that coach Benson, as a public-school employee, was protected by sovereign immunity and further that the circuit court erred in concluding that coach Benson's conduct failed to constitute gross negligence as a matter of Virginia immunity law. We hold the circuit court

---

[1] Petitioners do not appeal the circuit court's grant of summary judgment as to TCPS.

[2] Graham High School is located in Bluefield, Tazewell County, Virginia and part of the TCPS system.

lacked jurisdiction to maintain this action against coach Benson, an agent of the Commonwealth of Virginia, absent express consent by Virginia to subject itself to private suit in West Virginia courts. Accordingly, we remand to the circuit court to dismiss this case under the principles set forth in *Franchise Tax Bd. v. Hyatt*, 587 U.S. __, 139 S.Ct. 1485 (2019) (*Hyatt III*).

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

Bluefield State permitted Graham High's swim team, among other high school teams, to practice at Bluefield State's aquatic center. On November 14, 2019, Abigail Shoemaker and her Graham High teammates arrived for practice and found the pool was already occupied. While waiting for the pool to be available, coach Benson instructed the team to begin a series of "dry land exercises" around the deck area of the pool. The team was instructed to find available space along the walls of the aquatic center to perform an exercise called a "wall-sit." Some members of the team, including Abigail, took positions against the glass panel portions of the facility's walls. After taking their positions, the team was then instructed to perform a one-minute wall-sit, which required the students to lower themselves into a sitting posture while bracing themselves against the surface. Shortly before the wall-sit exercise was to conclude, the glass panel shattered,

---

[3] Our summary of the facts is abridged because, as discussed below, we need not consider, on the merits, whether coach Benson's conduct constituted gross negligence.

causing a large piece of glass to pierce Abigail's back. Coach Benson administered immediate aid to Abigail by applying pressure to the wound until EMS could arrive, but Abigail suffered significant blood loss and sustained serious injuries.

The Shoemakers filed suit alleging negligence clams against Bluefield State, TCPS, and coach Benson on May 24, 2021, in the Circuit Court of Mercer County, West Virginia. Bluefield State settled with the Shoemakers. TCPS and coach Benson filed a joint motion for summary judgment, which argued, among other things, that they were entitled to sovereign immunity for the claims against them citing, among other authorities, the 2019 United States Supreme Court *Hyatt III* case. The circuit court heard the motion on November 14, 2022, and on December 16, 2022, entered its order granting summary judgment to TCPS and coach Benson.

The circuit court proceeded to consider whether coach Benson was entitled to qualified immunity under Virginia law. The circuit court explained that "to the extent [coach Benson] argues that this Court does not have jurisdiction over her because of sovereign immunity, the Court must determine whether she qualifies for sovereign immunity." The circuit court concluded that pursuant to Virginia law, TCPS, as a school board, was entitled to absolute sovereign immunity for all claims alleged against them in

the complaint.[4] The circuit court further concluded that, as a matter of law, the coach's conduct did not constitute gross negligence, and therefore coach Benson was entitled to qualified immunity applying Virginia state law qualified immunity principles. The Shoemakers now appeal the circuit court's grant of summary judgment as to coach Benson.

## II.    STANDARD OF REVIEW

Our standard of review is well settled: "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). "[A]ppellate courts review questions involving principles of sovereign immunity *de novo*." *Gribben v. Kirk*, 195 W. Va. 488, 493, 466 S.E.2d 147, 152 (1995) (quoting *United States v. Woodley,* 9 F.3d 774, 781 (9th Cir. 1993)). With this plenary standard in mind, we address the issues presented.

## III.  DISCUSSION

As a general principle, "sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Steward*, 563 U.S. 247, 253 (2011). Whether sovereign immunity serves as an initial bar to a suit presents a jurisdictional issue. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("sovereign immunity is jurisdictional in nature"). Both federal and state courts are divided as to if this

---

[4]    The Shoemakers did not appeal the circuit court's ruling that TCPS is entitled to absolute immunity.

jurisdictional issue implicates subject matter jurisdiction of a court or if it constitutes a waivable component of personal jurisdiction.[5] Virginia has interpreted issues of sovereign immunity to implicate subject matter jurisdiction. *See Afzall ex rel. Afzall v. Commonwealth*, 639 S.E.2d 279, 281 (Va. 2007). While acknowledging the jurisdictional dimension to sovereign immunity matters, we find it unnecessary to further differentiate between personal and subject matter jurisdiction in this case because TCPS and coach Benson asserted sovereign immunity as a defense from this suit's inception, fully preserving this issue. *See Hyatt III*, 587 U.S. ___, 139 S. Ct. at 1491 n.1.

The Shoemakers' assignments of error focus largely on the circuit court's application of Virginia's sovereign immunity jurisprudence at summary judgment. They

---

[5] The United States Supreme Court has left the issue open: "[Whether] Eleventh Amendment immunity is a matter of subject-matter jurisdiction [is] a question we have not decided." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998). However, cases addressing the "jurisdictional nature" of sovereign immunity have not yet reached a consensus.

State courts, deciding issues of interstate sovereign immunity, are similarly divided: *Compare Henry v. New Jersey Transit Corp.*, 210 N.E.3d 451, 459 (N.Y. 2023) ("The Supreme Court's determination that interstate sovereign immunity is waivable fatally undermines [New Jersey]'s argument that interstate sovereign immunity is rooted in subject matter jurisdiction because subject matter jurisdiction, as a rule, 'cannot be dispensed with by litigants' and 'can never be forfeited or waived'") *and Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 400 n.10 (Pa. 2021) ("We treat sovereign immunity as a waivable defense that does not implicate a trial court's competence to hear a case"), *with Christ v. Texas Dep't of Transportation*, 664 S.W.3d 82, 86 (Tex. 2023), *reh'g denied* (May 5, 2023) ("sovereign immunity implicates a trial court's subject-matter jurisdiction") *and Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 371 (Pa. 2021) ("Sovereign immunity is an absolute defense that is not waivable." (citation omitted)).

challenge the circuit court's determination that coach Benson's conduct did not constitute gross negligence so as to entitle her to qualified immunity under Virginia's law. Because we decide this case on more basic "structural" interstate sovereign immunity principles, we need not address the merits of the Shoemakers' challenge to the circuit court's gross negligence findings under Virginia's state law qualified immunity jurisprudence.[6]

### A. Overview of Virginia Sovereign Immunity Principles

A brief overview of Virginia's sovereign immunity jurisprudence provides context to the circuit court's order below. "As a general rule, the Commonwealth is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action." *Afzall*, 639 S.E.2d at 282 (quoting *Alliance to Save the Mattaponi v. Commonwealth,* 621 S.E.2d 78, 96 (Va. 2005)). This immunity extends to government agencies, including local school boards. *See Kellam v. Sch. Bd. of City of Norfolk*, 117 S.E.2d 96, 100 (Va. 1960) "An employee of a governmental body is entitled to the protection of sovereign immunity." *Lentz v. Morris*, 372 S.E.2d 608, 610 (Va. 1988) (quoting *Messina v. Burden*, 321 S.E.2d 657, 660 (Va. 1984)).

---

[6] Rule 10(c)(3) of the Rules of Appellate Procedure provides that: "The statement of the assignments of error will be deemed to include every subsidiary question fairly comprised therein." Moreover, because sovereign immunity implicates a controlling constitutional issue, we may consider it. *See PITA, LLC v. Segal*, No. 22-ICA-4, 2023 WL 5843577 (W. Va. Ct. App. Sept. 11, 2023) (citing Syl. Pt. 1, *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005) (appellate courts have the discretion to raise a controlling constitutional issue for the first time on appeal).

Under Virginia law, in most instances, state agents are also protected by sovereign immunity; however, "[a] state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected [by sovereign immunity]." *James v. Jane*, 282 S.E.2d 864, 869 (Va. 1980); *accord* Va. Code § 8.01-220.1:2 (2013) (immunizing teachers employed by a local school board from liability within the scope of employment, unless acting grossly negligent). Further, an educator's "supervision and control of a physical education class" are acts within the scope of immunity. *Lentz*, 372 S.E.2d at 610–11. Otherwise, in order to overcome sovereign immunity, the court must determine that the immunity has been expressly waived by statute. "'[O]nly the legislature acting in its policy-making capacity can abrogate the Commonwealth's sovereign immunity.'" *Afzall*, 639 S.E.2d at 282 (quoting *Commonwealth v. Luzik*, 524 S.E.2d 871, 876 (Va. 2000)). "A 'waiver of immunity cannot be implied from general statutory language' but must be 'explicitly and expressly announced' in the statute." *Id.* (quoting *Hinchey v. Ogden*, 307 S.E.2d 891, 895 (Va. 1983)). The circuit court worked through these principles in ruling on the motion for summary judgment.

However, throughout this litigation, TCPS and coach Benson asserted a broad interstate or "structural" sovereign immunity principle citing *Hyatt III*. This principle addresses the fundamental question of whether federal law prohibits a West Virginia court from entering a judgment or, indeed, from asserting any jurisdiction over another sovereign state.

**B. Structural Interstate Sovereign Immunity under Hyatt III**

In 2019, the Supreme Court of the United States in *Franchise Tax Bd. v. Hyatt*, 587 U.S. ___ applied a structural source of interstate sovereign immunity. "Interstate sovereign immunity is… integral to the structure of the [U.S.] Constitution." *Hyatt III*, 587 U.S. at ___, 139 S.Ct. at 1498. In *Hyatt III*, a Nevada resident sued the California Franchise Tax Board ("Board") in Nevada state court claiming that the Board committed various torts in Nevada against him while it conducted tax audits. A Nevada jury agreed with the taxpayer and awarded significant damages against the Board. Ultimately, the Supreme Court after considering the case two times earlier, decided that the United States Constitution does not permit a state to be sued by a private party without its consent in the courts of a different state, overruling *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182 (1979) (the Supreme Court permitted a suit for damages against an instrumentality of Nevada in a California court concerning an auto accident in California involving an employee of the University of Nevada).

We now turn to the circumstances of the case at bar in light of *Hyatt III*. According to Virginia law, coach Benson falls within the category of state agents entitled to a presumption of state immunity.[7] The Shoemakers do not dispute this; nor do they

---

[7] *See Lentz*, 372 S.E.2d at 610–11 (an educator's "supervision and control of a physical education class" are acts within the scope of immunity). This immunity has also been codified:

Any teacher employed by a local school board in the Commonwealth shall not be liable for any civil damages for any acts or omissions resulting from

8

dispute that, at the time of the incident, coach Benson was an employee of TCPS, a swim team coach supervising her students. Suits against state agents, in their official capacity, are treated the same as suits against the state itself:

> Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent . . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, . . . a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (cleaned up) (emphasis added). Given coach Benson's status as a state agent, West Virginia's courts may not proceed to determine the merits of her entitlement to qualified immunity under Virginia law absent clear consent or waiver.

We briefly consider if the immunity has been waived by explicit consent or conduct. "A State's consent to suit must be "unequivocally expressed" in the text of the relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)); *accord Afzall ex rel. Afzall v.*

---

the supervision, care or discipline of students when such acts or omissions are within such teacher's scope of employment and are taken in good faith in the course of supervision, care or discipline of students, unless such acts or omissions were the result of gross negligence or willful misconduct.

Va. Code § 8.01-220.1:2(A).

*Commonwealth*, 639 S.E.2d 279, 282 (Va. 2007). A "[w]aiver [of sovereign immunity] may not be implied." *Sossamon*, 563 U.S. at 284 (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999)); *accord Afzall*, 639 S.E.2d at 282. However, a sovereign's litigation conduct may create a finding of waiver. *See, e.g.*, *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002). At oral argument, the Shoemakers conceded that "no behavior . . . took place during the case" that would constitute waiver. Accordingly, we need not further address waiver by conduct.[8]

This leaves us to consider whether Virginia has unequivocally expressed its consent to be sued in West Virginia. Virginia's highest court has explained that "'only the legislature acting in its policy-making capacity can abrogate the Commonwealth's sovereign immunity.'" *Afzall*, 639 S.E.2d at 282 (quoting *Commonwealth v. Luzik*, 524 S.E.2d 871, 876 (Va. 2000)). Accordingly, we must look to Virginia's codified law. During oral argument, the Shoemakers indicated they were relying on a Virginia statute to create a waiver of sovereign immunity.[9] Specifically, counsel articulated that the statute requires a state agent to "qualify" for immunity. In other words, in the Shoemakers' view, coach

---

[8] We also find *Hyatt III* instructive on this point, as the Supreme Court addressed a similar issue. There, in an interstate suit heard in Nevada, despite the extensive litigation a California agency had engaged in, the Supreme Court concluded that, because the agency had raised and maintained its assertion of immunity from the suit's inception, it had not waived its immunity by conduct. *See Hyatt III*, 587 U.S. at ____, 139 S. Ct. at 1491 n.1.

[9] While never specifically mentioned, we presume counsel was referring to the statutory provision governing civil immunity for Virginia's educators. *See* Va. Code § 8.01-220.1:2.

Benson was unprotected by sovereign immunity until her conduct was determined to not be grossly negligent. Further, until that determination occurs, any jurisdictional issues created by interstate sovereign immunity are not ripe for adjudication. We find this argument unpersuasive in light of the sweeping structural interstate sovereign immunity rule set forth in *Hyatt III*.

### III. CONCLUSION

After examining relevant Virginia law, we fail to find a waiver of Virginia's immunity by express waiver or consent.[10] Accordingly, in light of the constitutional rule enunciated in *Hyatt III*, we reverse the December 16, 2022, order of the Circuit Court of Mercer County and remand this matter for dismissal of the claims.[11]

Reversed and Remanded.

---

[10] Other courts applying *Hyatt III* have come to similar conclusions. *See State v. Great Lakes Mins., LLC*, 597 S.W.3d 169, 173 (Ky. 2019) (holding that *Hyatt III* barred a suit against a state agent acting in his official capacity); *Farmer v. Troy Univ.*, 879 S.E.2d 124, 131 (N.C. 2022) *cert. denied*, 143 S. Ct. 2561 (2023); *Marshall v. Se. Pennsylvania Transportation Auth.*, 300 A.3d 537, 549 (Pa. Commw. Ct. 2023); *see also Nizomov v. Jones*, No. 2020-09716, 2023 WL 6853989, at *2 (N.Y. App. Div. Oct. 18, 2023); *Belfand v. Petosa*, 196 A.D.3d 60, 73, (N.Y. App. Div. 2021).

[11] We note a savings statute may be applicable to the dismissal of these claims. *See* Va. Code § 8.01-229 (2016) (tolling statutes of limitations when claims are dismissed without an adjudication on the merits).